# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PENSACOLA ROBINSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 16-cv-1203-JPG-CJP ) |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security, | ) ) ) |
| Defendant.[1] | ) ) |

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Pensacola Robinson, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Ms. Robinson applied for disability benefits in August 2013. She later amended her alleged onset date to June 30, 2013. After holding an evidentiary hearing, ALJ Joseph P. Donovan, Sr., denied the application on April 7, 2015. (Tr. 90-98.) The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1.) Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Plaintiff's Arguments

Plaintiff makes the following arguments:

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. *See Casey v. Berryhill*, 853 F.3d 322 (7th Cir. 2017). She is automatically substituted as defendant in this case. *See* FED. R. CIV. P. 25(d); 42 U.S.C. § 405(g).

1. The ALJ erred by failing to evaluate all of plaintiff's impairments.

2. The ALJ erred in weighing the opinion of Dr. Whealon, plaintiff's treating physician.

## **Applicable Legal Standards**

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

> listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). See also, *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) ([u]nder the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that the Commissioner made no mistakes of law. This scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306

(7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence: "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). While judicial review is deferential, however, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The ALJ's Decision

ALJ Donovan followed the five-step analytical framework described above. He determined that Ms. Robinson had not worked at the level of substantial gainful activity since the alleged onset date, and that she was insured for DIB through December 31, 2018. He found that plaintiff had severe impairments of sciatic nerve damage, right ankle arthrosis, obesity, and hypertension, and that these impairments did not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level with a number of physical limitations. Based on the testimony of a vocational expert, the ALJ concluded that plaintiff could not do her past work, but she was not disabled because she was able to do other jobs which exist in significant numbers in the national and regional economies.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this

Memorandum and Order. The following summary of the record is directed to plaintiff's arguments.

1. **Agency Forms**

Plaintiff was born in 1962 and was almost 51 years old on the alleged date of onset. (Tr. 301.)

Plaintiff said she was unable to work because of sciatic nerve damage and swelling in her right ankle. She was 5'1" and weighed 165 pounds. She had worked in the past as a child care helper, a hotel housekeeper, and a cleaner. (Tr. 305-306.)

In September 2013, plaintiff reported that she had pain shooting from her back into her buttocks and leg. This made it hard for her to stand for a long time. (Tr. 316.) She was able to lift about ten pounds. She experienced pain when bending, standing, reaching up, and sitting for a long time. (Tr. 321.) In November 2013, plaintiff reported that she was still working one or two days a month for a temp service, but she was limited in what she could do. She had been told that she was sitting too much at work. She sat because of her back pain. (Tr. 344.)

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in December 2014. (Tr. 105.)

Plaintiff was working part-time doing cleaning for a temp agency. The number of hours she worked per week varied. She made about $400 or $500 a month. (Tr. 106.) She lived with her daughter, who helped around the house and with grocery shopping. (Tr. 118-119.)

Plaintiff testified that she could not work full time because she experienced pain after standing for more than fifteen minutes and after sitting for fifteen to twenty minutes. (Tr. 110,

114.)  The pain was in her lower back, going down into her buttocks into her left leg.  She had tingling in her feet.  Standing a lot caused a shooting pain down her left leg.  (Tr. 117-118.)

A vocational expert (VE) also testified.  The ALJ asked the VE a question which corresponded to the ultimate RFC findings: a hypothetical person who was able to perform light exertion at work, with a sit/stand option, limited to frequent climbing of ramps and stairs; no climbing of ladders, ropes or scaffolds; no crawling; frequent balancing, stooping, kneeling, crouching, and bending; no "concentrated exposure" to chemicals, fumes and mold; no extreme temperatures or hazards such as unprotected heights or moving machinery; and walking at most half of a block without a cane.  She was also limited to simple, repetitive, unskilled tasks.  The VE testified that this person could not do plaintiff's past work, but she could do other jobs such as bench assembler and inspector.  (Tr. 122-125.)

### 3.  Medical Records

In August 2011, an x-ray of the cervical spine showed moderate to severe degenerative changes from C2 to T1.  (Tr. 504.)

Plaintiff was treated for chronic low back pain as far back as August 2011.  (Tr. 491.)

Plaintiff received primary health care from Belleville Family Health Center.  In June 2013, Dr. Mansouri noted she had low back pain for over a year with radiation to the left posterior thigh and chronic right ankle sprain which may involve a ligament tear which was not healing.  She had no insurance and could not afford imaging studies or a referral to an orthopedic specialist.  (Tr. 471-473.)

Plaintiff went to the emergency room at Touchette Regional Hospital for low back pain on June 30, 2013, the alleged date of disability.  She was unemployed and had no insurance.  She

said she had low back pain for the past two months. On exam, she had moderate tenderness to palpation in the lower lumbar area. The assessment was back pain and sciatica. She was given an injection of Toradol and was prescribed Ultram. (Tr. 437-451.)

Dr. Whealon began treating plaintiff at Belleville Family Health Center in July 2013. He diagnosed L5 radiculopathy on the left with positive straight leg raising and reduced range of motion. He prescribed Mobic and Flexeril, and noted that she could not pay for physical therapy. (Tr. 466.)

Dr. Whealon saw plaintiff about five more times through Septebmer 2014. (Tr. 461-464, 516-529, 608-609.) In August 2013, he noted that she did janitorial work and could only stand for fifteen minutes. Straight leg raising caused radiation on the left. Range of motion was painful. She walked with a limp. (Tr. 461-464.) Her back condition was somewhat improved in December 2013 in that straight leg raising was less painful. She still had a limp and painful range of motion. He referred her for physical therapy. (Tr. 521-525.) In February 2014, her back pain was improved with physical therapy, but she still had sciatica symptoms and could not stand for more than 3 or 4 hours. (Tr. 516.)

Plaintiff attended physical therapy at Touchette Regional Hospital. A discharge note in February 2014 said that she had made progress in general strength, flexibility, mobility and functional motion, but she continued to complain of back and leg pain. (Tr. 561.)

Plaintiff was seen by Dr. Elleby at Belleville Family Health Center on June 16, 2014. Dr. Elleby noted that plaintiff had received a medical card. She had finished physical therapy in February and her back pain was not improved. On exam, she walked with a limp and had a painful range of motion. Dr. Elleby recommended additional physical therapy and referred her to

pain management. (Tr. 603-607.)

In July 2014, an MRI of the lumbar spine was performed. Findings included facet disease in varying degrees at L3-4, L4-5, and L5-S1; disc desiccation at L3-4 and L4-5, with diffuse disc bulge at L4-5; and a small annular disc tear at L5-S1. (Tr. 615-616.)

Plaintiff started another course of physical therapy in August 2014. (Tr. 566-567.)

In September 2014, Dr. Whealon noted that her lower back pain was doing better with physical therapy. She had received a series of injections from pain management.[3] Her gait was normal. He again prescribed Flexeril and Mobic. (Tr. 608-609.)

### 4. Dr. Whealon's Opinion

Dr. Whealon completed a Medical Source Statement in November 2014. He stated that plaintiff could lift ten pounds occasionally and could never lift twenty pounds or more. She could sit for two hours at a time and for a total of three to five hours a day. She could stand or walk for fifteen to thirty minutes at a time and for a total of two hours a day. She did not need a cane. She could occasionally stoop and reach above the head and rarely crouch, crawl or climb ladders and scaffolds. He said he had no information on her tolerance for exposure to odors, noise, vibration or temperature extremes. She would not need to lie down or take extra breaks during the workday. (Tr. 611-614.)

### 5. Medical Records Submitted to Appeals Council

After the ALJ denied her application, plaintiff submitted additional records to the Appeals Council in connection with her request for review. (*See* Tr. 1-4.) The medical records designated by the Appeals Council as Exhibit 10F (Tr. 617-665) were not before the ALJ.

---

[3] There are no treatment records from a pain management specialist in the transcript.

## Analysis

Plaintiff relies heavily on the records at Tr. 617-665 to support both of her arguments. However, those records cannot be considered by this Court in determining whether the ALJ's decision was supported by substantial evidence. Records "submitted for the first time to the Appeals Council, though technically a part of the administrative record, cannot be used as a basis for a finding of reversible error." *Luna v. Shalala*, 22 F3d 687, 689 (7th Cir. 1994).

Plaintiff first takes issue with the ALJ's handling of her neck and back problems. Pointing to the 2011 cervical x-ray and the 2014 lumbar MRI, she argues that the ALJ should have found at step 2 that her neck and back conditions were severe impairments. She also argues that, regardless of the step 2 findings, the ALJ failed to consider the effects of plaintiff's neck and back pain in combination with her other impairments.

The step 2 argument is a nonstarter. The designation of severe impairments at step 2 is a threshold issue. The failure to designate a particular impairment as "severe" at step 2 does not matter to the outcome of the case as long as the ALJ finds at least one severe impairment, continues on with the analysis, and considers the combined effect of all impairments, severe and non-severe. *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) (citing *Castile v. Astrue*, 617 F.3d 923, 927-928 (7th Cir. 2010)). Plaintiff's argument that the ALJ failed to consider the effects of her neck and back pain is not persuasive.

As to her cervical spine condition, the x-ray was done in August 2011, almost two years before plaintiff's alleged date of onset. She points to no evidence in the record supporting her suggestion that degenerative changes in her cervical spine caused her any functional limitations during the period at issue here.

It is clear that the ALJ considered and weighed the evidence as to limitations arising from her lumbar spine condition. Plaintiff seemingly ignores the fact that the ALJ found that her sciatica was a severe impairment at step 2.[4] He acknowledged the findings on the lumbar MRI, and discussed Dr. Whealon's notes as well as the physical therapy notes. (Tr. 94-95.)

Plaintiff does not point to any evidence that was ignored by the ALJ. She states that her cervical and lumbar conditions would limit her to—at most—sedentary work, but she does not elaborate on why that would be true. (*See* Doc. 20, p. 11.) She included a discussion of the evidence submitted to the Appeals Council in her summary of the medical evidence, suggesting that she relies on that evidence in support of her arguments. Again, that evidence was not before the ALJ and cannot be considered in reviewing for substantial evidence.

Next, plaintiff argues that the ALJ erred in giving only "little weight" to Dr. Whealon's opinion. The ALJ, however, was not required to credit Dr. Whealon's opinion even though he was a treating doctor: "while the treating physician's opinion is important, it is not the final word on a claimant's disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) (internal citation omitted). A treating doctor's medical opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record. *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016) (citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)).

The ALJ is required to consider a number of factors in deciding how much weight to give

---

[4] "Sciatica refers to pain that radiates along the path of the sciatic nerve, which branches from your lower back through your hips and buttocks and down each leg. Typically, sciatica affects only one side of your body. Sciatica most commonly occurs when a herniated disk, bone spur on the spine or narrowing of the spine (spinal stenosis) compresses part of the nerve. This causes inflammation, pain and often some numbness in the affected leg." *Sciatica*, MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/sciatica/basics/definition/con-20026478 (last visited on October 5, 2017.)

to a treating doctor's opinion. The regulations refer to a treating healthcare provider as a "treating source." The applicable regulation, 20 C.F.R. § 404.1527(c)(2), provides:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

If the ALJ decides not to give the opinion controlling weight, he is to weigh it applying the factors set forth in § 404.1527(c)(1)-(6). Supportability and consistency are two important factors to be considered in weighing medical opinions. In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques[,]' and (2) it is 'not inconsistent' with substantial evidence in the record." *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010).

Thus, the ALJ can properly give less weight to a treating doctor's medical opinion if it is inconsistent with the opinion of a consulting physician, internally inconsistent, or inconsistent with other evidence in the record. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Further, in light of the deferential standard of judicial review, the ALJ is required only to "minimally articulate" his reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has characterized as "lax." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*,

529 F.3d 408, 415 (7th Cir. 2008).

The ALJ must be mindful that the treating doctor has the advantage of having spent more time with the plaintiff but, at the same time, he or she may "bend over backwards" to help a patient obtain benefits. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). *See also Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985) ("The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.").

ALJ Donovan gave four reasons for giving little weight to Dr. Whealon's opinion. He said that (1) the opinion did not address evidence that plaintiff's ankle and back pain improved with treatment; (2) the opinion did not "reference the conservative treatment"; (3) the opinion was "unsupported" because the doctor did not attach or refer to records that support it; and (4) Dr. Whealon had "limited knowledge" of plaintiff because he said he lacked information about tolerance to environmental conditions. (Tr. 95-96.)

Plaintiff takes issue with all four reasons. She is correct that one of the visits that the ALJ cited to show improvement in plaintiff's ankle and back predated her onset date. However, in his discussion of the medical evidence in general, the ALJ identified other treatment notes that reflected improvement with treatment. Plaintiff points out that there is no requirement that a doctor attaches or refers to records that support his opinion. That observation is true, but it is of limited significance. A treating doctor's opinion is entitled to controlling weight only where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not contradicted by other substantial evidence. 20 C.F.R. § 404.1527(c)(2); *see also Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016). The most logical reading of the ALJ's remark is that he was observing that Dr. Whealon did not point to any particular part of the medical record that

supported his opinion, which suggests that his opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques." She also argues that it was wrong of the ALJ to penalize her for failing to undergo surgery where surgery was not recommended. That is a misreading of the ALJ's statement. He did not penalize her for failing to undergo surgery; on the contrary, he simply observed that plaintiff's condition did not require surgery.

In sum, the ALJ gave adequate reasons for discounting Dr. Whealon's opinion. To the extent that plaintiff relies on her own subjective complaints in support of her argument that Dr. Whealon's opinion was an accurate statement of her limitations, the Court notes that she has not challenged the ALJ's assessment of her credibility or of her daily activities.

Plaintiff also argues that Dr. Whealon's opinion was supported by the opinion of Dr. Rhadans, another treating doctor. However, Dr. Rhadans's opinion (Tr. 665) was in the medical evidence submitted to the Appeals Council and was not before the ALJ when he made his decision.

Plaintiff briefly asserts that the Appeals Council "does not appear to have" considered Dr. Rhadans' statement. (Tr. 16.) The decision of the Appeals Council denying review, as opposed to an order refusing to consider additional evidence, is within the discretion of the Appeals Council. It is not the final decision of the Commissioner, and is not subject to judicial review. 42 U.S.C. § 405(g); *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997). Plaintiff has not developed an argument that the Appeals Council committed a mistake of law in refusing to consider her additional evidence. *See Farrell v. Astrue*, 692 F.3d 767, 770-771 (7th Cir. 2012). That argument is thus deemed waived. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

Plaintiff has not identified any error requiring remand. Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed

if it is supported by substantial evidence, and the Court cannot make its own credibility determination or substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Elder*, 529 F.3d at 413. ALJ Donovan's decision is supported by substantial evidence, so it must be affirmed.

## Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Donovan committed no errors of law and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Pensacola Robinson's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**
**DATE:   October 17, 2017**

*s/ J. Phil Gilbert*
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**